**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**SOUTHEASTERN DIVISION**

| | | |
|---|---|---|
| JOSEPH B. CANNON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:23-CV-97 RLW |
| | ) | |
| MIKE JONES, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## <u>MEMORANDUM AND ORDER</u>

This matter is before the Court upon review of the amended complaint filed by self-represented plaintiff Joseph B. Cannon. ECF No. 10. For the reasons discussed below, the Court will issue service on plaintiff's individual capacity claims against defendant Mike Jones for the alleged violations of plaintiff's First Amendment rights, and will dismiss the remaining claims against all defendants.

## Background

Plaintiff, a pretrial detainee currently housed at the Butler County Jail (the "Jail"), filed this action pursuant to 42 U.S.C. § 1983 on June 5, 2023. ECF No. 1. Plaintiff's allegations were against four employees of the Jail: (1) Jail Administrator Mike Jones, (2) Sheriff Mark Dobbs, (3) Nurse Carla Doe, and (4) Nurse Shane Doe. The defendants were sued in both their official and individual capacities.

Plaintiff alleged he was transferred into the Jail on March 9, 2023 and was immediately denied an Islamic prayer rug, reading books, and a prayer schedule. *Id.* at 6. Although Bibles were readily available within the Jail, he claimed Qurans were not. *Id.* at 9. Other than a Quran, plaintiff did not identify the other "reading books" he could not access. Plaintiff alleged a family member attempted to drop off a Quran for him, but "was denied per policy." *Id.* Plaintiff blamed defendants

Jones and Dobbs for creating the policy. Plaintiff further asserted he was provided "a sleeping mattress with blood stains," a cell without lights, and an "unsanitary" sink and toilet. *Id.* at 7. He requested cleaning supplies and was given a dirty mop. *Id.* Plaintiff complained the Jail lacked a system for filing grievances. *Id.*

Plaintiff alleged he was placed in a "freezing" pod on March 10, 2023. *Id.* at 8. Plaintiff asked an officer to turn up the temperature but his request was denied. *Id.* He claimed defendants Jones and Dobbs have a policy "where inmates can't bring out towels or blankets for warmth from their cells to combat the extreme cold temperature in [the] pod." *Id.* Plaintiff additionally asserted that on March 11, 2023 he was served pork, which is prohibited by his religion. *Id.* He claimed he notified officers of his need for a religious dietary exception, but was told the Jail would not provide pork substitutes as per the policies of defendants Jones and Dobbs. *Id.* Plaintiff did not indicate whether he was served pork on more than one occasion.

Plaintiff alleged he was served two small tacos for dinner on March 14, 2023, which he claimed were "below guidelines to satisfy nutritional standard." *Id.* at 9. Plaintiff also asserted he was "placed in the Segregation unit [and] given 30 days without [] being given a[n] opportunity [to] present witness[es], evidence, or have a hearing." *Id.* at 9. Plaintiff attributed these complaints to the policies of defendants Jones and Dobbs.

Finally, plaintiff alleged he submitted a medical request regarding collapsed arches in his feet. *Id.* at 10. Plaintiff asked Nurses Shane Doe and Carla Doe for permission to use the "supported sandals that were taken from him upon being processed" at the Jail. *Id.* Plaintiff alleged defendant Nurse Shane told him she would speak to defendant Jones to see if he would allow the request, but plaintiff never heard back. *Id.* Plaintiff claimed defendant Nurses Shane and Carla were deliberately indifferent to his serious medical needs because they "allowed Mike Jones (jail admin) to deny [him] medical care[.]" *Id.*

Under the section designated to describe his injuries, plaintiff wrote, "I still haven't been given any alternative to help regulate feet swelling nor an answer/solution." *Id.* at 5. For relief, plaintiff sought $150,000 in monetary damages and remediation of the issues asserted in his complaint. *Id.* at 11-12.

On June 26, 2023, the Court reviewed the complaint pursuant to 28 U.S.C. § 1915(e)(2), and determined it was subject to dismissal. ECF No. 8. As to his official capacity claims against all four of the defendants, the Court explained that a suit against a public employee in his or her official capacity is merely a suit against the public employer. Because all defendants were alleged to be employees of the Butler County Jail, the official capacity claims against them could not pass initial review because county jails are not legal entities amenable to a § 1983 suit. As to his individual capacity claims for medical indifference against defendant Nurses Carla and Shane, the Court explained the allegations were factually insufficient. Finally, as to the individual capacity claims against defendants Jones and Dobbs for failure to provide religious accommodations, exposure to unsanitary cell conditions and cold temperatures, and placement in segregation without due process, the Court explained how each claim either failed to state a constitutional violation or did not assert sufficient facts to present a plausible violation. In consideration of plaintiff's self-represented status, the Court provided him with an opportunity to submit an amended complaint.

## Amended Complaint

Plaintiff timely filed his amended complaint against the same four defendants. ECF No. 10. Plaintiff indicates he is bringing this action against defendants Jones and Dobbs in both their official and individual capacities, but does not specify what capacity he sues defendant Nurses Carla and Shane.

Plaintiff alleged he was processed into the Jail on March 9, 2023 by a non-defendant correctional officer. *Id.* at 3. Plaintiff requested to keep his Islamic prayer rug and book titled,

"Alex Haley Biography of Malcolm X," but the correctional officer denied him both items citing to the policies of defendant Jones. *Id.* at 3. Plaintiff claims the Jail has a "no book policy" and "no alternative book programs for inmates." *Id.* Later in the day, plaintiff was served a pork bologna sandwich. *Id.* Plaintiff informed the correctional officer that he was not permitted to eat pork pursuant to his Muslim faith, but was told there was "no substitute for pork policy" at the Jail "per Mike Jones." *Id.* at 3-4.

On March 11, 2023, he was again served pork and plaintiff reasserted his need for a religious meal exception. *Id.* at 4. In response, a non-defendant correctional officer told him to "eat around the pork." *Id.* When plaintiff explained he could not eat food touching pork as per his religion, the officer allegedly said, "tough luck." *Id.* Since that date he has been "continuously served pork on trays." *Id.* Plaintiff asserts he has sent grievances to defendant Jones, but has not received a response. On one occasion, plaintiff asserts he refused to comply with a lockdown so he "could possibly speak to Mike Jones or Mark Dobbs about [his] religious dietary concerns." *Id.* The incident caused him to be placed into segregation where he continued to receive meals with pork. *Id*. Plaintiff claims he "started eating the trays against [his] will [in order] to fulfill dietary calories." *Id.*

Plaintiff asserts he has been denied an Islamic prayer schedule for approximately five months. He explains his religion requires him to pray five times throughout the day depending on the position of the sun. Because inmates do not have access to windows, plaintiff asserts he is unable to properly practice his religion without an Islamic prayer schedule. *Id.* at 5. Additionally, plaintiff claims a family member attempted to drop off a Quran, but he was denied access to it "per policy of Mike Jones." *Id.* at 6. Plaintiff states he cannot obtain a copy of the Quran within the Jail because only Bibles are available for purchase in the commissary. *Id.*

On March 16, 2023, plaintiff "filled out a request form regarding fasting for the month of Ramadan." *Id.* The form was directed to defendant Jones, who plaintiff claims did not respond, preventing him from participating in the fast. *Id.* On March 21, 2023, plaintiff completed a second request form addressed to defendant Jones. *Id.* In the form, plaintiff explained his need to participate in "an Islamic practice called Al-Fitra, which is the shaving of the armpits and pubic area." *Id.* Plaintiff claims he was unable to access the shower and a razor in order to participate in the practice. *Id.* at 7.

Plaintiff's claims against defendant Dobbs are not as detailed as those alleged against defendant Jones. Plaintiff limits his claims against defendant Dobbs to the following: (1) failure "to hire/train a[] suitable jail administrator that's knowledgeable regarding [his] 1st and 14th Amendment Rights concerning religion as well as [his] 1st Amendment protections on books or an alternative;" (2) failure "to train Mike Jones regarding medical issues that are not security related;" and (3) failure "to hire or train employees to provide basic constitutional conditions and instead have customs and conditions that are violating [his] 5th and 8th Amendment Rights[.]" *Id.* at 7, 8, 11.

As to defendant Nurses Shane and Carla, plaintiff alleges he completed a Medical Request on March 20, 2023 "concerning [his] feet being in pain and swelling up." *Id.* at 8. Plaintiff claims his arch support sandals were confiscated upon his being processed into the Jail because it was the policy of Mike Jones for detainees and inmates to wear jail-issued footwear. Plaintiff asserts Nurses Shane and Carla "never provided [him] with pain medication or medication to reduce swelling, nor was [he] given a medical alternative for foot support." *Id.* Plaintiff further complains that although Nurse Shane told him she would follow up with defendant Jones to see if he would make an exception and allow him to wear his personal sandals, she failed to follow up with him or

provide an "alternative for treatment." *Id.* Plaintiff asserts "[m]edical staff alerted [him] that Mike Jones denied the medical request for the sandals[.]" *Id.*

Finally, plaintiff alleges he encountered unsanitary conditions when he was booked into the Jail. *Id.* at 10. Specifically, plaintiff claims he was given a blood-stained mattress without a sheet; was assigned to a cell with no lights and a dirty sink and toilet; was required to use dirty, moldy showers; and was not provided with proper cleaning supplies. *Id.* He claims "[e]very pod [he has] been placed in has these issues except [] some pods now have lights in cells." *Id.*

Plaintiff describes his injuries as pain and swelling in his feet, as well as rashes and skin infections due to the unsanitary conditions at the Jail. For relief, plaintiff seeks access to a Quran, prayer rug, Islamic prayer schedule, and pork-free meals. *Id.* at 14. He also seeks approximately $55,000 from each defendant. ECF No. 14-15.

## Legal Standard on Initial Review

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed *in forma pauperis* if it is frivolous, malicious, or fails to state a claim upon which relief may be granted. An action is frivolous if it "lacks an arguable basis in either law or fact." *Neitzke v. Williams*, 490 U.S. 319, 328 (1989). An action fails to state a claim upon which relief may be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense. *Id*. at 679. The court must assume the veracity of well-pleaded

facts but need not accept as true "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* at 678 (citing *Twombly*, 550 U.S. at 555).

This Court must liberally construe complaints filed by laypeople. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). This means that "if the essence of an allegation is discernible," the court should "construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015) (quoting *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004)). However, even self-represented complaints must allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). Federal courts are not required to assume facts that are not alleged, *Stone*, 364 F.3d at 914-15, nor are they required to interpret procedural rules in order to excuse mistakes by those who proceed without counsel. *See McNeil v. United States*, 508 U.S. 106, 113 (1993).

## Discussion

### A. Official Capacity Claims

Plaintiff names four defendants in this action, all of whom are alleged to be employees of the Butler County Jail. Plaintiff specified he is bringing this action against defendants Jones and Dobbs in both their official and individual capacities. He did not, however, specify what capacity he wishes to sue defendant Nurses Carla and Shane.[1] Where a complaint is silent about the capacity in which a plaintiff is suing a defendant, the district court must interpret the complaint as including only official capacity claims. *Egerdahl v. Hibbing Community College*, 72 F.3d 615, 619 (8th Cir.

---

[1] In the July 26, 2023 Memorandum and Order, the Court clearly provided the following instruction: "Plaintiff should also indicate whether he intends to sue each defendant in his or her individual capacity, official capacity, or both." ECF No. 8 at 11. The Court warned "that the filing of an amended complaint completely replaces the original complaint, so it must include all claims plaintiff wishes to bring." *Id.* at 10.

1995); *Nix v. Norman*, 879 F.2d 429, 431 (8th Cir. 1989). Thus, the Court will treat the amended

complaint as bringing only official capacity claims against defendant Nurses Carla and Shane.[2]

In an official capacity claim against an individual, the claim is actually "against the

governmental entity itself." *See White v. Jackson*, 865 F.3d 1064, 1075 (8th Cir. 2017). Thus, a

"suit against a public employee in his or her official capacity is merely a suit against the public

employer." *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999). A jail, however,

is not a distinctly suable entity under 42 U.S.C. § 1983. *See Ketchum v. City of West Memphis,

Ark.*, 974 F.2d 81, 82 (1992); *Owens v. Scott Cnty. Jail*, 328 F.3d 1026, 1027 (8th Cir. 2003)

("county jails are not legal entities amenable to suit"); *De La Garza v. Kandiyohi Cnty. Jail*, 18 F.

App'x 436, 437 (8th Cir. 2001) (affirming district court dismissal of county jail and sheriff's

department because they are not suable entities). Consequently, plaintiff's complaint is legally

frivolous and/or fails to state a claim against all four defendants in their official capacities.

Even if Butler County is substituted as the employer, plaintiff has still failed to state a

claim. Plaintiff repetitively asserts that the challenged policies were those of defendant Jones. *See

e.g.*, ECF No. 10 at 3-4 (denied prayer rug, non-religious book, and pork-free meal tray "per Mike

Jones"). Plaintiff does not allege that any of the violations resulted from a municipal policy or

custom or the municipality's failure to train or supervise. *See Monell v. Department of Social

Services*, 436 U.S. 658, 690 (1978). In other words, plaintiff does not present any facts related to

a particular Butler County policy which has caused him harm. There is also no assertion of a pattern

of unconstitutional misconduct constituting a municipal custom. Finally, plaintiff alleges no facts

establishing that Butler County had notice of any inadequate training or supervision. Therefore,

---

[2]The Court notes that even if plaintiff had sued the defendant Nurses in their individual capacities, the amended complaint does not cure the original pleading deficiencies identified in the Court's July 26, 2023 Memorandum and Order. Plaintiff's allegations fall short of presenting plausible deliberate indifference claims as he does not provide factual support for intentional maltreatment or refusal to provide essential care. *See* ECF No. 8 at 6-7.

plaintiff fails to state a municipal liability claim against Butler County. For this reason, plaintiff's official capacity claims against all four defendants fail to state a claim for relief and must be dismissed under 28 U.S.C. § 1915(e)(2)(B).

### B.  Individual Capacity Claim Against Jail Administrator Mike Jones

#### 1.  *First Amendment*

Plaintiff alleges he is Muslim and defendant Jones has substantially burdened his religious exercise since his transfer into the Jail on March 9, 2023. Plaintiff alleges he has repeatedly asked non-defendant correctional officers for access to a Quran, prayer rug, Islamic prayer schedule, and pork-free meals, but has been denied "per Mike Jones." Plaintiff asserts he has sent grievances directly to defendant Jones regarding the alleged barriers he has faced in practicing his religion, as well as a request for assistance to participate in religious activities related to Ramadan and Al-Fitra, but they have gone unanswered.

Inmates retain protections afforded by the First Amendment "including its directive that no law shall prohibit the free exercise of religion." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987). To prevail on a free exercise claim under section 1983, a plaintiff must show that (1) he held a sincere religious belief and (2) the official action substantially burdened his exercise of that belief. *Hernandez v. Comm'r of Internal Revenue*, 490 U.S. 680, 699 (1989). *See also Patel v. U.S. Bureau of Prisons*, 515 F.3d 807, 813 (8th Cir. 2008)). A prison official "may be held liable for policy decisions that create unconstitutional conditions[.]" *Oliver v. Greenwell*, No. 1:05-CV-111-LMB, 2005 WL 2406015, at *2 (E.D. Mo. Sept. 29, 2005). For the purposes of initial review, plaintiff has stated a cognizable First Amendment Free Exercise claim in that he has alleged he is a practicing Muslim who has been substantially burdened by defendant Jones in his ability to practice his religion.

Plaintiff further alleges he was denied the ability to keep a copy of Malcolm X's biography due to defendant Jones's "no book policy." ECF No. 10 at 3. Plaintiff asserts there is "no alternative book programs for inmates." *Id.* It appears plaintiff is alleging defendant Jones has a complete prohibition against books in the Jail. Prisoners retain a First Amendment right to newspapers, magazines, and other reading material, although this right is subject to a jail's penological interests. *Bell v. Wolfish*, 441 U.S. 520, 550 (1979) (holding that a restriction on pretrial detainees' reading materials did not violate the First Amendment because the restriction was a "rational response" to the legitimate security concerns of the institution); *see also Turner v. Safley*, 482 U.S. 78, 89 (1987) ("when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests."); *Kunze v. Bertsch*, No. 1:05-CV-104, 2006 WL 267150, at *11 (D.N.D. Jan. 4, 2006) (same). Although the Jail here may have legitimate reasons for Jones's alleged "no book policy," for the purposes of initial review, plaintiff has stated a cognizable First Amendment claim.

In this case, having carefully reviewed and liberally construed the amended complaint, the Court concludes that plaintiff has adequately plead plausible First Amendment claims against defendant Jones in his individual capacity. The Court will therefore require defendant Jones to respond to the amended complaint as to the First Amendment claims.

## 2. *Medical Deliberate Indifference*

Plaintiff alleges it is defendant Jones's policy to require detainees and inmates to wear jail-issued footwear. Because of this policy, his personal arch-support sandals were confiscated upon his arrival to the Jail. On April 11, 2023, plaintiff requested medical assistance due to swollen and painful feet. Plaintiff saw defendant Nurse Shane who allegedly told him that she would show his personal sandals to defendant Jones to see if he would allow plaintiff to wear them. Plaintiff claims medical staff later told him that Mike Jones denied his request.

At all relevant times, plaintiff was a pretrial detainee, so his constitutional claims fall within the ambit of the Fourteenth Amendment. *See Morris v. Zefferi*, 601 F.3d 805, 809 (8th Cir. 2010). However, the Fourteenth Amendment provides at least as much protection to pretrial detainees as the Eighth Amendment does to convicted prisoners. *Hartsfield v. Colburn*, 371 F.3d 454, 457 (8th Cir. 2004). Thus, a pretrial detainee's medical claims are analyzed under the Eighth Amendment's deliberate indifference standard. *See Grayson v. Ross*, 454 F.3d 802, 808 (8th Cir. 2006).

In order to establish deliberate indifference, a plaintiff must prove he suffered from an objectively serious medical need, and prison officials actually knew of and disregarded that need. *Roberts v. Kopel*, 917 F.3d 1039, 1042 (8th Cir. 2019). "A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997). Deliberate indifference can include the intentional denial or delay of access to medical care, or the intentional interference with treatment or prescribed medication. *Vaughn v. Lacey*, 49 F.3d 1344, 1346 (8th Cir. 1995).

To prevail under this standard, an inmate must demonstrate the prison official's actions were "so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care." *Jackson v. Buckman*, 756 F.3d 1060, 1066 (8th Cir. 2014). As such, "deliberate indifference requires a highly culpable state of mind approaching actual intent." *Kulkay v. Roy*, 847 F.3d 637, 643 (8th Cir. 2017). A showing of deliberate indifference requires more than a mere disagreement with treatment decisions and is greater than gross negligence. *Gibson v. Weber*, 433 F.3d 642, 646 (8th Cir. 2006).

The Court finds that the allegations against defendant Jones are insufficient to show his actions were "so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care." *Jackson*, 756 F.3d at 1066. Plaintiff does not allege that a medical professional,

before or after his transfer into the Jail, diagnosed him with a specific foot condition or prescribed him special shoes. In other words, plaintiff does not assert he was denied orthopedic shoes specifically designed to alleviate a known foot condition. Rather, plaintiff asked a Jail Nurse for permission to wear his own personal sandals, which he describes as having arch support. Plaintiff does not allege that defendant Jones is preventing him from receiving additional medical treatment, denying access to medical personnel, or ignoring a prescribed course of treatment by a physician. Plaintiff merely asserts that defendant Nurse Shane indicated she would ask defendant Jones about plaintiff's request to wear his personal sandals, and the request was denied.

Therefore, plaintiff's claim against defendant Jones for medical deliberate indifference must be dismissed.

### 3. *Conditions of Confinement*

Plaintiff alleges that on March 9, 2023, the date of his transfer into the Jail, he was given a mattress with blood stains and no sheets, a cell with no lights, a sink and toilet with dirt and grime, and was required to use showers he describes as "dirty" and "unsanitary with mold." ECF No. 10 at 10. Plaintiff claims "[e]very pod [he has] been placed in has these issues except [] some pods now have lights in cells." Plaintiff states he asked a non-defendant correctional officer for "something to clean the mattress and received a paper towel." *Id.* He further asserts he "asked via request form to receive adequate cleaning supplies and received no answer." *Id.* Plaintiff does not specify who he sent the request to at the Jail. Due to the unsanitary conditions, plaintiff asserts he has "broken out badly with rashes" and "is currently being treated for infections on [his] skin." *Id.* at 11. Plaintiff does not state that he has told anyone at the Jail about his skin issues.

The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones. *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994). Under the Eighth Amendment, prisoners have a right to "reasonably adequate sanitation, personal hygiene, and laundry privileges,

particularly over a lengthy course of time." *Thurmond v. Andrews*, 972 F.3d 1007, 1012 (8th Cir. 2020). A prison official will only be found liable under the Eighth Amendment for denying a detainee of humane conditions of confinement if: (1) objectively, the conditions constituted a substantial risk of serious harm to health or safety; and (2) subjectively, the official knows of and disregards an excessive risk to the detainee's health or safety. *Washington v. Denney*, 900 F.3d 549, 559-560 (8th Cir. 2018).

To satisfy the objective prong, the court looks to the "totality of circumstances of [a detainee's] confinement" and specifically focuses on "the length of [detainee's] exposure to unsanitary conditions and how unsanitary the conditions were." *Owens v. Scott Cnty. Jail*, 328 F.3d 1026, 1027 (8th Cir. 2003) (per curiam); *see also Hudson v. McMillian*, 503 U.S. 1, 8 (1992) (the objective component is "contextual and responsive to contemporary standards of decency"). To satisfy the subjective prong, it must be shown the official "recognized that a substantial risk of harm existed *and* knew that their conduct was inappropriate in light of that risk." *Washington*, 900 F.3d at 559 (emphasis in original). The official must "both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 560. Furthermore, in testing the appropriateness of the official's response, it is not enough that the official denied a detainee humane conditions or was otherwise negligent in responding, rather it must be shown that the official was "deliberately indifferent in their response to the perceived risk." *Id*.

The Court finds plaintiff has offered no evidence whatsoever to establish defendant Jones was deliberately indifferent to the described conditions of confinement. Plaintiff does not allege that he sent a grievance, letter, or other notice to defendant Jones specifically regarding the cleanliness of his assigned cells and showers. *See Washington v. Denney*, 900 F.3d 549, 560 (8th Cir. 2018) ("a prison official cannot be found liable under the Eighth Amendment for denying an

- 13 -

inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety"). Rather, plaintiff limits his allegations to stating he spoke with a non-defendant correctional officer and asked "via request form to receive adequate cleaning supplies" but received no answer. Plaintiff does not assert this request form was directed at defendant Jones. There are no facts alleged that suggest defendant Jones knew of these conditions or of plaintiff's alleged skin issues. *See, e.g.*, *Edmonds v. Green*, No. 1:19-CV-00067 JMB, 2019 WL 2286044, at *3 (E.D. Mo. May 29, 2019) (dismissing plaintiff's claim regarding the provision of a dirty mattress with no sheets because plaintiff did not allege that he informed the defendant prison officials of the conditions).

In the Court's July 26, 2023 Memorandum and Order directing plaintiff to amend his complaint to cure his pleading deficiencies, plaintiff was clearly advised of the requirement "to allege facts demonstrating the personal responsibility of the defendant for harming him" and to "explain the role of each defendant so that each defendant will have notice of what he or she is accused of doing or failing to do." *See* ECF No. 8 at 11. Plaintiff has not complied with this directive as to his conditions of confinement claim against defendant Jones. General responsibility as a supervisor of a Jail or prison cannot provide the personal involvement required to support liability under § 1983. *Keeper v. King*, 130 F.3d 1309, 1314 (8th Cir. 1997).

Therefore, plaintiff's claim against defendant Jones based on his conditions of confinement must be dismissed.

### C.  Individual Capacity Claim Against Sheriff Mark Dobbs

Plaintiff alleges three claims against defendant Dobbs: (1) "failed to hire/train a[] suitable jail administrator that's knowledgeable regarding [his] 1st and 14th Amendment Rights concerning religion as well as [his] 1st Amendment protections on books or an alternative;" (2) "failed to train Mike Jones regarding medical issues that are not security related;" and (3) failed "to hire or train

employees to provide basic constitutional conditions and instead have customs and conditions that are violating [his] 5th and 8th Amendment Rights[.]" *Id.* at 7, 8, 11. Unlike the claims against defendant Jones, plaintiff does not assert that defendant Dobbs established any constitutionally violative policies or that he had been sent any grievances to put him on notice of the alleged issues. As such, plaintiff's allegations against defendant Dobbs fail to state a claim.

Liability in a 42 U.S.C. § 1983 case is personal. *Frederick v. Motsinger*, 873 F.3d 641, 646 (8th Cir. 2017). In other words, "Government officials are personally liable only for their own misconduct." *S.M. v. Krigbaum*, 808 F.3d 335, 340 (8th Cir. 2015). As such, § 1983 liability "requires a causal link to, and direct responsibility for, the deprivation of rights." *Mayorga v. Missouri*, 442 F.3d 1128, 1132 (8th Cir. 2006) (quoting *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990)). *See also Kohl v. Casson*, 5 F.3d 1141, 1149 (8th Cir. 1993) (dismissing plaintiff's excessive bail claims because none of the defendants set plaintiff's bail and, therefore, "there can be no causal connection between any action on the part of the defendants and any alleged deprivation" of plaintiff's rights). To that end, a plaintiff must allege facts connecting the defendant to the challenged action. *See Bitzan v. Bartruff*, 916 F.3d 716, 717 (8th Cir. 2019).

With regard to a supervisor, "a supervising officer can be liable for an inferior officer's constitutional violation only if he directly participated in the constitutional violation, or if his failure to train or supervise the offending actor caused the deprivation." *Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010). *See also Morris v. Cradduck*, 954 F.3d 1055, 1060 (8th Cir. 2020) ("To state a claim against a supervisor, a plaintiff must show that the supervising official, through his own individual actions, violated the Constitution").

In this case, plaintiff has not shown a causal connection between any action on the part of defendant Dobbs and any alleged deprivation of his rights. That is to say, plaintiff provides no indication as to exactly what defendant Dobbs did or did not do to harm him. Instead, he merely

- 15 -

states that defendant Dobbs failed to properly hire and train. This type of conclusory pleading is not sufficient to state a claim. *See Neubauer v. FedEx Corp.*, 849 F.3d 400, 404 (8th Cir. 2017) ("A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do"). In short, plaintiff has not established that defendant Dobbs directly participated in a constitutional violation.

Further, to establish a failure to train or supervise, plaintiff "must demonstrate that the supervisor was deliberately indifferent to or tacitly authorized the offending acts," which "requires a showing that the supervisor had notice that the training procedures and supervision were inadequate and likely to result in a constitutional violation." *Andrews v. Fowler*, 98 F.3d 1069, 1078 (8th Cir. 1996). Plaintiff makes no factual allegations regarding such notice. *See Hamilton v. Palm*, 621 F.3d 816, 817-18 (8th Cir. 2010) (explaining that "[a] pleading that merely pleads labels and conclusions, or a formulaic recitation of the elements of a cause of action, or naked assertions devoid of factual enhancement will not suffice").

Therefore, plaintiff's claim against defendant Dobbs for failing to train or supervise must be dismissed.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's official capacity claims against defendants Mike Jones, Mark Dobbs, Carla Doe, and Shane Doe are **DISMISSED** without prejudice.

**IT IS FURTHER ORDERED** that plaintiff's individual capacity claim against defendant Mark Dobbs is **DISMISSED** without prejudice.

**IT IS FURTHER ORDERED** that plaintiff's individual capacity claims against defendant Mike Jones as to medical deliberate indifference and conditions of confinement are **DISMISSED** without prejudice.

**IT IS FURTHER ORDERED** that the Clerk of Court shall issue process or cause process to issue upon the amended complaint as to defendant Jail Administrator Mike Jones regarding plaintiff's First Amendment claims. Defendant Jones shall be served by issuance of summons and service by the U.S. Marshal's Service at the Butler County Detention Center, 200 Phillip Kearbey Boulevard, Poplar Bluff, Missouri 63901.

_Ronnie L. White_

**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**

Dated this <u>5th</u> day of September, 2023.